UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIMOTHY PAUL AMBEAU,

                Plaintiff,

v.                                        Case No. 19-cv-1616-pp

BROOKE KLEMANN, JENNIFER HOMALSK,
AARON SABLE, LANCE WIERSMA,
KEVIN A. CARR, and TONY EVERS,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 5), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

---

Timothy Paul Ambeau, who is confined at the Brown County Detention Center and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 5, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C.

1

§1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 13, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $10.00. Dkt. No. 6. The court received that fee on November 18, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee, and will allow him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II. Screening the Complaint**

 A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that on November 12, 2018, he was released from confinement and admitted to the St. John the Evangelist Homeless Shelter in Green Bay, Wisconsin. Dkt. No. 1 at 4. He says that this is a "regional shelter," meaning that it is open during the winter, from about November 1 through May 30. Id. The plaintiff alleges that on April 5, 2019, he told his probation agent, defendant Brooke Klemann, that he was homeless. Id. She allegedly told him that she could not help him at that time, and she informed him of his next office appointment. Id.

The plaintiff states that after speaking with Agent Klemann, he called his brother who lives in Milwaukee. Id. On April 6, 2019, the plaintiff's brother allegedly gave him money for a bus ticket, and he took a bus to Milwaukee. Id. The plaintiff states that he informed Klemann that he was in Milwaukee and asked her to "transfer [his] probation" to Milwaukee. Id.

The plaintiff alleges that while in Milwaukee he contacted someone in probation and parole at the Division of Community Corrections and informed them that Klemann was his agent. Id. He says that he provided Klemann with an address where he would be living so that the residence could be assessed for the probation transfer. Id. at 5. The plaintiff alleges that he had a new agent in Milwaukee. Id. He states that in May 2019 someone came to assess the residence, but that his housing was denied. Id. The plaintiff says that this left him homeless and he lost everything he owned. Id.

The plaintiff alleges that he contacted Klemann and told her that he was homeless in Milwaukee. Id. She allegedly said that "there was no way she could help" and she advised him to return to Green Bay. Id. The plaintiff states that he told Klemann that the closest he could get was Manitowoc, and then he lost contact with Klemann because someone stole his phone. Id. The plaintiff says that he had to search "day by day" to find shelter due to lack of family support and poor conditions. Id.

The plaintiff states that his situation is the same as anyone leaving jail, being released to the Division of Community Corrections with an agent to accompany him re-entering the community. Id. a 6. He says that once the

4

court ordered probation, he became a client of Klemann whose job was to aid him in a safe and successful completion of the ordered probation. Id. The plaintiff points to the Division of Community Corrections' mission statement, which includes the words "provide protect promote and partner." Id. The plaintiff says that Klemann disregarded the mission statement. Id.

The plaintiff alleges that an agent is deliberately indifferent to adverse conditions when she is subjectively aware of the condition or danger complained of by the client but consciously disregards the complaint. Id. at 7. He also states that "cruel and unusual punishment was inflicted when the agent was deliberate and indifferent to the medical needs of the client." Id.

The plaintiff says that he informed the following people of Klemann's actions: defendants Governor Tony Evers; DOC Secretary Kevin Carr; Lance Wiersma, who is Head of DOC Division of Community Corrections; Aaron Sable, who is regional chief of the Division of Community Corrections; and Jennifer Homalsk, who is a corrections supervisor with the Division of Community Corrections. Id. at 2-3.

C. Analysis

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was 'incarcerated under conditions posing a

5

substantial risk of serious harm' and (2) that the defendants acted with 'deliberate indifference' to his health or safety." Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010). Courts have found that the conduct of parole officers implicates the Eighth Amendment in some situations. See, *e.g.,* Mitchell v. Kallas, 895 F.3d 492, 502 (7th Cir. 2018) (parole officers blocked parolee from obtaining medical treatment); Hankins v. Lowe, 786 F.3d 603, 605 (7th Cir. 2015) (imposing restrictions beyond parole term).

In Mitchell, 895 F.3d at 502, the Court of Appeals for the Seventh Circuit held that a parolee stated an Eighth Amendment claim that parole officers acted with deliberate indifference to the parolee's gender dysphoria because the officers impermissibly forbade her from dressing as a woman and seeking hormone treatment on her own, treatment that she needed to treat her condition. The court of appeals explained that the "[t]hough parole officers may have no duty under [*Estelle v.*] *Gamble* to provide a parolee with medical care or ensure that she receives it, they at least may be constitutionally obligated not to block a parolee who is trying to arrange such care for herself without any basis in the conditions of parole." Id.

In this case, the plaintiff alleges that Klemann violated his constitutional rights, presumably by not helping him find somewhere to live. When the plaintiff told Klemann that he was homeless, she told him she could not help him at that time, and she advised him of his next office visit appointment. The next day the plaintiff he moved to Milwaukee. He moved into a residence and obtained a Milwaukee-based agent. After the plaintiff's housing in Milwaukee

6

was denied and he became homeless, he contacted Klemann who recommended that he return to Green Bay. Soon after, he lost contact with Klemann because his cell phone was stolen.

While the plaintiff was incarcerated, he had a constitutional right to be protected from conditions of confinement that denied his "the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994). But the plaintiff was not confined when the events he described in the complaint occurred. The plaintiff does not allege that Agent Klemann prevented him from finding housing. He does not even allege that Klemann was required to find housing for him. He does not allege that Klemann knew that he was at risk of serious harm but ignored that risk. He alleges only that he expected Klemann to help him find housing, but that she didn't. A state actor's failure to provide someone with assistance does not violate the Constitution. Nor does the plaintiff's claim that Klemann violated the DCC's mission statement violate the Constitution. Finally, as to defendants Homalsk, Sable, Wiersma, Carr and Evers, the plaintiff says only that he complained to these people. He makes no allegations that they did anything to violate his constitutional rights.

Because the plaintiff has not stated a claim under §1983, the court must dismiss his case.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 5.

7

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency having custody of the plaintiff shall collect from his institution trust account the $340.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of January, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**